In re Paul A. SEYMOUR, Jr. and
Dorothea W. Seymour,
Debtors.

Paul A. SEYMOUR, Jr. and Dorothea
W. Seymour, Plaintiffs,

v.

Steven C. HAMLIN; Neil Murney; First
National Bank in Wichita; Barbour Ti-
tle Company; F.S. Allen Abstract & Ti-
tle Company; and Chicago Title Insur-
ance Company, Defendants.

Bankruptcy No. 90–42543–11.
Adv. No. 92–5040.

United States Bankruptcy Court,
D. Kansas.

Sept. 9, 1992.

Christopher J. Redmond and W. Thomas Gilman of Redmond, Redmond & Nazar, Wichita, Kan., for debtors/plaintiffs.

James J. McGannon of Regan & McGannon, Wichita, Kan., for defendant Steven C. Hamlin.

William Tinker, Sr. of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, Kan., for defendant Neil Murney.

Sharon Anderson Self, Asst. Gen. Counsel, for defendant First Nat. Bank in Wichita.

Chris Elliott, Kansas City, Mo., and Randall S. Barbour, Winfield, Kan., for defendants Barbour Title Co., F.S. Allen Abstract & Title Co., and Chicago Title Co.

Patrick C. Blanchard of Young, Bogle, McCausland, Wells & Clark, P.A., Wichita, Kan., for creditors Warren Brown Gillespie and Polly Gillespie Townsend.

## MEMORANDUM OF DECISION

JOHN T. FLANNAGAN, Bankruptcy Judge.

The plaintiffs in this declaratory judgment adversary proceeding are husband and wife. They have jointly petitioned for relief under Chapter 11, and with an affiliated debtor, they have put forth a joint liquidating plan of reorganization. In this opinion, when the Court refers to the plaintiffs as debtors, debtors-in-possession, or trustees, the reference is to the plaintiffs' jointly administered estates. Debtors have filed to resolve a dispute about the status of a contract for deed effectuating Dorothea Seymour's pre-bankruptcy sale of Rock Creek Ranch to Steven C. Hamlin. The ranch is located partly in Butler County and partly in Cowley County, Kansas.

The debtors-in-possession, Paul A. Seymour, Jr. and Dorothea W. Seymour, appear by their attorneys, Christopher J. Redmond and W. Thomas Gilman of Redmond, Redmond & Nazar, Wichita, Kansas. Defendant Steven C. Hamlin appears by his attorney, James J. McGannon of Regan & McGannon, Wichita, Kansas. Defendant Neil Murney appears by his attorney, William Tinker, Sr. of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, Kansas. Defendant First National Bank in Wichita appears by its Assistant General Counsel, Sharon Anderson Self. Defendants Barbour Title Company, F.S. Allen Abstract & Title Company, and Chicago Title Company ("Title Companies") appear by their attorneys, Chris Elliott, Kansas City, Missouri, and Randall S. Barbour, Winfield, Kansas. Creditors Warren Brown Gillespie and Polly Gillespie Townsend appear by their attorney, Patrick C. Blanchard of Young, Bogle, McCausland, Wells & Clark, P.A., Wichita, Kansas.

### I

In the Stipulations for Use in Lieu of Trial filed May 1, 1992, the parties state that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper; that all necessary and indispensable parties are joined; and that the Court may try this adversary proceeding to final judgment.

The Court finds independently of the stipulation that this adversary proceeding is core under 28 U.S.C. 157 and that the Court has jurisdiction under 28 U.S.C. 1334 and the general reference order of the District Court effective July 10, 1984.

The Stipulations for Use in Lieu of Trial consists of 19 pages with 29 paragraphs of written stipulations with these attached exhibits:

Exhibit "A" Contract for Purchase and Sale of Real Estate

Exhibit "B" Owner's Title Policy—Chicago Title Insurance Company

Exhibit "C" Owner's Title Policy—Chicago Title Insurance Company

Exhibit "D" Endorsement

Exhibit "E" Supplemental Certificate of Title

Exhibit "F" Agreed Journal Entry of Judgment

Exhibit "G" Schedule of Payments

Exhibit "H" Statutory Warranty Deed

Exhibit "I" Statutory Warranty Deed

Exhibit "J" Escrow Instructions

Exhibit "K" Release of Mortgage

Exhibit "L" Release of Mortgage

Exhibit "M" Kansas Supreme Court Opinion

Exhibit "N" Letter of February 3, 1992, from Blanchard to Gilman

Those additional stipulations necessary to an understanding of this decision are as follows:

## STIPULATIONS FOR USE IN LIEU OF TRIAL

... 4. This voluntary Chapter 11 bankruptcy was filed bankruptcy on December 28, 1990.

5. On or about August 29, 1990, Debtors entered into a contract ("the contract") to sell the following-described real estate ("the real estate") [known as the "Rock Creek Ranch"] to Steven C. Hamlin ("Hamlin"). In addition, the parties entered into two addendums to the contract, one dated August 29, 1990 and the other dated November 9, 1990. The original contract and both addendums are attached hereto as Exhibit A and will be referred to herein in the aggregate as "the contract." The real estate is described as follows: .... [A complete legal description of the real estate is given in the Stipulations.]

6. The purchase price Hamlin agreed to pay Seymours for the real estate according to the terms of the contract was $800,000.00. The property had been purchased by Dorothea Wofford Seymour from the Estate of Pauline Brown Gillespie on July 27, 1990 for the price of $604,630.00.

7. On November 9, 1990, Seymours delivered to the First National Bank in Wichita ("the Bank"), the escrow agent under the terms of the contract, two deeds which conveyed the real estate to Hamlin. The deeds were dated November 7, 1990. Two deeds were used because the real estate is located in two counties, Butler County and Cowley County. The Bank, as Escrow Agent, currently has the deeds in its possession.

8. Hamlin took possession of the real estate on or about October 1, 1990, has retained possession since that date, and continues to be in possession as of this date.

9. On November 29, 1990, Barbour Title Company ("Barbour") as agent for Chicago Title Insurance Company ("Chicago Title") issued, or caused to be issued, a policy of title insurance, Policy No. 17 0036 04 000509, in the amount of $129,000.00 as to the portion of the real estate located in Cowley County, Kansas. A true, correct and complete copy of said policy is attached hereto as Exhibit B.

10. On November 8, 1990, F.S. Allen Abstract & Title Company ("F.S. Allen") as agent for Chicago Title, issued, or caused to be issued, a policy of title insurance, Policy No. 17 0054 04 005581, in the amount of $670,000.00 as to the portion of the real estate located in Butler County, Kansas. A true and correct copy of said policy is attached hereto as Exhibit C. On August 9, 1991, F.S. Allen, as agent for Chicago Title, issued or caused to be issued an endorsement to the aforedescribed policy wherein item numbered 8 of Schedule B of the aforesaid policy was deleted. A true, correct and complete copy of said endorsement is attached hereto as Exhibit D. On October 3, 1991, F.S. Allen issued a Supplemental Certificate of Title as to that portion of the real estate located in Butler County, Kansas. A true, correct and complete copy of said Supplemental Certificate of Title is attached hereto as Exhibit E.

11. Neil Murney ("Murney") was the broker for the aforedescribed sale. According to the terms of the contract, Murney is entitled to a commission in the total amount of $30,000.00 which is to be paid in five installments. The first installment in the amount of $7,500.00 was paid at closing. The remaining four installments are in the amount of $5,625.00 each. To date, Murney has received the

first of the four remaining installments due under the terms of the contract.

## II

First, the debtors filed a motion to assume the Rock Creek Ranch contract for deed as an executory contract. Then, they filed an amended and supplemental motion to assume the contract, or, in the alternative, to determine whether the contract for deed was executory pursuant to 11 U.S.C. § 365. Creditors Warren Brown Gillespie and Polly Gillespie Townsend objected.

Finally, the debtors filed this adversary proceeding joining as defendants the purchaser, Steven C. Hamlin; the sale broker, Neil Murney; First National Bank in Wichita; and the three related title insurance companies, Barbour Title Company, F.S. Allen Abstract & Title Company, and Chicago Title Insurance Company.

The action is one for declaratory judgment that: (1) the contract for deed is valid, binding and enforceable; (2) the plaintiffs have satisfied all requirements of the contract; and (3) the closing of the contract on November 9, 1990, and the continuing possession by the buyer, Steven C. Hamlin, since October 1, 1990, and his payments under the contract and other conduct satisfies his duties under the contract.

The debtors also seek orders: (1) requiring the Bank to pay broker, Neil Murney, according to the contract terms; (2) requiring the Bank to deliver present and future escrow proceeds to the estate; and (3) requiring the Bank to deliver the deed to Hamlin when he complies with the contract.

The creditors, Warren Brown Gillespie and Polly Gillespie Townsend, moved to intervene in the declaratory adversary proceeding on March 30, 1992, and were granted permission to do so by order dated May 18, 1992. After being allowed to intervene, Gillespie and Townsend did not file an answer to the complaint, but did file a document captioned, "Reply of Creditors Warren Brown Gillespie and Polly Gillespie Townsend to Debtors' Brief on Rock Creek Ranch Matters." The Reply states that plaintiffs have a long-standing interest in the Rock Creek Ranch.

Apparently, Rock Creek Ranch was owned and developed by the creditors' grandfather, Warren Brown, and devolved to Pauline Brown Gillespie, Dorothea Seymour's aunt. Pauline Brown Gillespie granted Dorothea Seymour an option to purchase the Ranch. The creditors challenged this purchase option in state court, but were unsuccessful. Dorothea Seymour then purchased the Ranch from the estate of Pauline Brown Gillespie on July 27, 1990, and sold it Steven C. Hamlin under the contract for deed here in dispute.

Gillespie and Townsend oppose assumption and favor rejection of the Hamlin contract. They argue that Hamlin's right to retain possession of the ranch under § 365(i) after rejection does not impede rejection of the contract under § 365(a); that § 365(i) contemplates an innocent purchaser in possession which they suggest Hamlin is not; and that the business judgment test turns in favor of rejecting the contract because they have offered to buy the ranch from the estate for $805,000.00 cash.

Defendants Hamlin and Murney filed answers and briefs in support of the debtors' complaint. Defendants Barbour Title Company, F.S. Allen Abstract & Title Company, and Chicago Title Company filed a joint answer asking the Court to confirm the installment contract and order performance thereunder by the parties. First National Bank in Wichita did not file an answer.

## III

The contract at the center of this dispute obligated Steven C. Hamlin to pay a total purchase price of $800,000.00 on the following terms with which he has so far complied. Earnest money of $40,000.00 was to be paid at the signing of the contract on August 29, 1990. A down payment of $160,000.00 was due at closing on November 9, 1990. The balance of the purchase price was to be paid in five annual installments of $120,000.00 due on October 1 of each year beginning in 1991 and ending in 1995. The installments were to bear interest at the prime rate of the First National

Bank of Wichita, Kansas, on each payment date. In return, Dorothea Seymour, the seller, was to transfer title to the Ranch upon completion of Hamlin's performance and was to guarantee good title by providing policies of title insurance for each of the tracts located in the different counties. The contract provided protection for the buyer by requiring a deed be deposited in escrow with instructions that it be delivered when the buyer's performance was complete.

This case takes us into the murky realm of executory contracts under § 365 of the Code. Fortunately, the writings and debates of Professor Jay Lawrence Westbrook and Michael T. Andrew have illuminated the way, while suggesting reform of § 365.[1] To the extent relevant here, the statute provides:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor....

(i) (1) If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.

(2) If such purchaser remains in possession—

. (A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

■ If the contract is not executory, the statute does not apply and the contract cannot be assumed or rejected, but it still exists as an asset of the bankruptcy estate.[2] The debtor is still entitled to receive the contract payments, and the buyer is entitled to continued possession and good title upon completion of his performance.

■ If the contract is executory, the court must decide whether to approve the debtor's business judgment decision to assume it. If the assumption is approved and the trustee fails to perform, the nondebtor party has an administrative expense priority claim.[3]

■ When is a contract "executory"? Generally, this word means that as of the commencement of the bankruptcy case, the parties on both sides of the contract must have continuing obligations of performance. Or, using the well-known Countryman definition, is the court faced with "a contract under which the obligation of both

1. Westbrook, *A Functional Analysis of Executory Contracts,* 74 Minn.L.Rev. 227 (1989); Andrew, *Executory Contracts in Bankruptcy: Understanding Rejection,* 59 Colo.L.Rev. 845 (1988); Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook,* paper presented to the National Conference of Bankruptcy Judges, Chicago, Illinois (1990); Westbrook, *A Fresh Start for Bankruptcy Contracts,* paper presented to the National Conference of Bankruptcy Judges, Chicago, Illinois (1990).

2. The Court adopts Professor Westbrook's position that the contract becomes property of the bankruptcy estate under § 541. For historical reasons, Mr. Andrew believes the contract re-

mains outside the bankruptcy estate until it is assumed. In the debate between the two, Professor Westbrook calls this "the exclusionary rule." Since under the exclusionary rule, rejection leaves the contract with the debtor, rather than with the estate, the rule can have an important bearing on whether the debtor can continue to reap the benefits of the contract after the trustee rejects it.

3. In this case, if the buyer performs, all that remains to be done is for the escrow agent to deliver the deed. Consequently, it is unlikely that the buyer will ever have an administrative expense claim.

the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other"? [4] Were the obligations of the parties under the Rock Creek Ranch contract at the time of bankruptcy "so far unperformed that the failure of either [party] to complete performance would constitute a material breach excusing the performance of the other"?

When the bankruptcy was filed, the buyer was obligated to make installment payments of the purchase price, and the seller had to deliver a deed showing merchantable title when the buyer performed, which would not be for five years. But, the seller had delivered a deed into escrow. After that delivery, the seller had nothing else to do. The escrow agent had control of the deed with slight chance of interference by the seller. When the buyer performs, the escrow agent will deliver the deed. Did the seller really have any remaining obligation of performance under the contract when this case was filed? Had she not completed her performance? The answer is uncertain. One could argue that the "obligation of performance" is what counts. Since that obligation is unfulfilled until there has been an actual delivery of the deed to the buyer, the seller has not performed. Or, one could say that seller completed her performance when she delivered the deed to the escrow agent since at that time the seller lost her ability to withhold performance.

Professor Westbrook would do away entirely with this dubious exercise of finding "executoriness" as a condition to assumption or rejection of contracts. He believes that the need to find executoriness under the present version of § 365 involves the court in unnecessary legal quandaries. This Court agrees.

The intervenors propose to pay the debtors $805,000.00 cash if the Court will order rejection of the contract; provided, they can have the Ranch. As the following excerpt from their Reply shows, the intervenors view the contract as executory and seem to believe that rejection of the contract can somehow gain them its possession:

> The next issue facing the Court is whether Hamlin, as a purchaser in possession per § 365(i) would be entitled to continue to perform under the terms of the agreement and remain in possession of the ranch. These creditors contend that the provisions of § 365(a) supersede § 365(i) and that Court retains the right to review and reject executory contracts despite the provisions of § 365(i). To suggest otherwise defies logic. If, for example, a debtor sold real property at 50% of its fair market value pursuant to a land sale contract, the Court would not be forced to accept such a deal. Even in this instance, had the Seymours sold the ranch at the same price over the course of 30 years, § 365(i) would not hold the Court powerless to act on behalf of the estate to reject such a contract.

> Moreover, Hamlin is not the innocent purchaser in possession contemplated by § 365(i). He knew from the outset that the ranch was encumbered by the lis pendens and judgment (Stipulations 5/1/92, ¶ 17). In light of this knowledge, he took the steps necessary to protect his interests and should the Court reject the executory contract, Hamlin will not suffer any damage.

Reply of Creditors Warren Brown Gillespie ad Polly Gillespie Townsend to Debtors' Brief on Rock Creek Ranch Matters, pages 6–7.

> In regard to § 365(i), debtors said that as Hamlin can assume the contract under that provision of the Code, it makes no difference if the Court accepts or rejects the contract. But, debtors have misapprehended the provisions of § 365(i). First, § 365(a) applies by its terms except as provided in §§ 765 and 766 and Subsections (b), (c) and (d) to § 365. So, any

---

**4.** Countryman, *Executory Contracts in Bankruptcy;* Part I, 57 Minn.L.Rev. 439, 460 (1973); Part II, 58 Minn.L.Rev. 479 (1974).

conflict between § 365(a) and § 365(i) must be resolved in favor of the former. See, *Harvest Corp. v. Riviera Land Company*, 868 F.2d 1077, 1080 (9th Cir. 1989) which involved a discussion of § 365(d) overriding the provisions of § 365(a). See also, *In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219 (9th Cir.1990). If the Court did not retain the power to reject contracts under § 365(a), absurd and unjust results could follow as outlined in creditors' Introduction to this brief. The Court must retain the ultimate power to make these determinations in the best interests of the estate and that is precisely why appellate courts have determined that § 365(a) overrides all other provisions of § 365 except subsection (b), (c) and (d). Moreover, in enacting § 365(i), Congress only intended to protect innocent victims (see *In re Booth*, 19 B.R. 53, 63 (Bankr.D.Utah 1982) or uninformed purchasers in possession, not people like Hamlin who took possession of the property with full knowledge that the Seymours could not convey merchantable title to him. Despite this knowledge, Hamlin, who could have backed out of the deal then, executed the November 9, 1990 addendum and took the steps necessary to protect his interests. Further, he assumed the risk for any improvements he made to the property with knowledge that the Seymours might not be able to deliver clear title to the ranch at any time in the future.

Given the fact that the land sale contract is executory; the business judgment tests turn in favor of rejecting it; § 365(a) overrides § 365(i); and Hamlin is not the innocent purchaser in possession contemplated by § 365(i); debtors' request for relief in this regard should be denied.

Reply of Creditors Warren Brown Gillespie ad Polly Gillespie Townsend to Debtors' Brief on Rock Creek Ranch Matters, pages 17–18.

As Professor Westbrook points out, in addition to creating legal obligations, contracts also often create property rights in the contracting parties. He calls these property rights "Interests in the Thing Itself" or "ITIs" to suggest they are not necessarily coextensive with property rights created by state law. He proposes that ITIs be determined under a federal standard, not just by reference to state law rights. In this case, Mr. Hamlin has possession of the property he purchased. He has paid the debtor $320,000.00 to date, and he will have paid $440,000.00 by October 1, 1992, if he continues his past performance. Under state law, and as Professor Westbrook would have it, under federal equity law recognizing ITIs, Hamlin has substantial property rights in the Ranch that rejection of the contract under § 365 cannot displace.

■ While it is true that the Court can refuse assumption of an executory contract and order its rejection in the best interests of the estate, the effect of rejection is limited. It is beyond question that § 365 rejection is not an avoiding power. Were the Court to say that the contract is executory and deny assumption, the result would be rejection, which is merely a breach of the contract, not its rescission.[5]

■ Code § 365(i) does not create Hamlin's rights in the Ranch property. It merely recognizes the efficacy of those rights and, upon rejection of an executory contract, protects his right to continue in possession of the property, complete the contract payments and receive a deed. It underscores the notion that rejection under § 365 is not an avoiding power that can be used to remove Mr. Hamlin from the property, no matter how strong the intervenor's desire to keep the property in the family. Only by the exercise of some avoiding power under Chapter 5 of the Code could the Court dispossess Mr. Hamlin of his property rights in the Ranch.

The arguments put forth by the intervenors that § 365(a) somehow overrides or

---

5. Section of 365(g) of Title 11, U.S.C., states: "Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease— ...."

supersedes § 365(i) and that Hamlin must be and is not an "innocent purchaser" require little comment. Although § 365(i) was amended in 1984 to include timeshare interests, § 365(a) and (i) have coexisted as part of the statutory scheme since the Code's enactment in 1977. In light of this fact and in the absence of conflicting language within the two sections themselves, it is hard to see how § 365(a) can be said to negate the continued operation of § 365(i). In any event, as stated above, § 365(i) only recognizes and protects rights that exist independently, it does not create them. Wherever the intervenors got the idea that § 365 requires a purchaser to be "innocent," it was not from the language of the statute itself. These two arguments are what must be "rejected" in this case.

The final issue before the Court is the debtors' request that the funds paid by Hamlin into escrow be released. The creditors state in their Reply that if the Court rules in favor of the debtors, they have no opposition to the disbursement of the funds, but only for the payment of administrative expenses and secured debts. Since there is no suggestion in the Stipulation that the proceeds from the sale of the real estate are claimed as collateral by any of the creditors, the escrow funds are simply property of the estate which the debtors-in-possession can possess and use consistent with their status as trustees and the requirements of the Bankruptcy Code.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.